The Chief Justice
delivered the opinion of the Court:
The bill in the case of York against Tyler seeks to em force a mechanics’ lien, and alleges that on the 18th of August, 1883, the plaintiff entered into a contract with the defendants, Tyler & Rutherford, described in the said contract as agents, to build and construct seven houses upon seven sub-lots in square 115, in this city, for the sum of $30,800; that the plaintiff proceeded to perform the contract on his-part, and while so performing and carrying out the same, on the 8th of October, 1883, the defendants, Tyler & Rutherford, took possession of the buildings so being erected, dispossessed the plaintiff and refused to allow him to proceed with his contract, and thereupon proceeded to complete the work themselves; that at the latter date materials had been furnished and labor performed by the plaintiff upon all of the said houses, and some payments had been made by the defendants, Tyler & Rutherford, on account of such work and materials, leaving a balance due to the plaintiff; that at the date of the contract, four of these lots, 69 to 72, inclusive, were owned by the defendant Tyler; another lot, 73, by Emma J. Brewer, and two others, 74 and 75, by George L. Knowles and Joseph A. Jones, as tenants in common; that on the 24th of November, 1883, plaintiff filed his notice of lien on the first four mentioned lots and premises in the name of Tyler & Rutherford, as owners, and subsequently on the 12th' of July, 1884, filed another such notice of lien against the said lots in the name of Richard W. Tyler as owner. There are other averments in the bill which are not material to the stating of this account. The original answer of the defendants, Tyler & Rutherford, admits the making of the contract and partial execution of the work; also the taking possession by them on the 8th of October, and their refusal to allow the plaintiff to proceed, and that they finished the said work. This answer also assigns as *267 reasons for the said acts, that the plaintiff had failed to comply with the terms of the contract and requirements of the plans and specifications. The defendants also state that the necessary cost of completing the buildings exceeded the original contract price. Exceptions to this answer were filed and sustained by the court, and thereupon the said defendants filed an amended answer, in which they aver that the plaintiff did not comply with his said contract, in the following among other particulars: That the workmanship by the plaintiff on the said buildings was not true, perfect, or thoroughly workmanlike and according to the plans and specifications as required by his contract; that the materials were not good, proper or sufficient, or of the best description as required by the said contract, and that neither workmanship nor materials were satisfactory to the architect as required by the said contract; that the plaintiff delayed entering upon the said work for several weeks after the execution of the contract, and then failed to give it proper personal superintendence, or to cause the work to be done in the manner required by the contract. It is further specified that neither the bricks nor mortar were o.f the description required by the specifications, that the walls were not constructed in accordance therewith, nor were the joists or bridging of the description required, and that the workmanship and materials were in other ways deficient and defective. It is also averred in the answer that by reason of the plaintiff’s determination not to comply with the contract, and the slow progress of the work and the confusion attending the same, it was apparent that the houses would not be completed within the period provided for in said contract; and that the plaintiff had suspended work for want of means to carry it on.
The plaintiff brought similar suits to enforce similar liens in causes Nos. 9105 and 9106. Proofs were taken, and by stipulation are to be used in the three causes. A copy of the contract of August 18, 1885, is filed as an exhibit to the bill. The agreement was made between the plaintiff, as *268 builder, of the one part, and Richard W. Tyler and Robert G. Rutherford, agents,' of the other part. The plaintiff agreed that on or before the ist of February, 1884, he would well and sufficiently erect, finish and deliver, in a true, perfect and thoroughly workmanlike manner, seven three-story and basement brick dwelling-houses as per plans and specifications to the contract attached and signed by the parties, and dated the same as the agreement, on ground situated in this city, and agreeably to the plans, drawings and specifications aforesaid, prepared for the said houses by John G. Myers, architect, to the satisfaction and under the direction and personal supervision of the said Myers, architect, and to find and provide such good, proper and sufficient materials of all kinds whatsoever, as should be proper and sufficient for the completing and finishing of the said houses within the time aforesaid, for the sum of $30,800. The parties of the second part agreed, in consideration of the execution of the agreement by the party of the first part, to pay to him the said sum in certain specified instalments or payments, as the work reached certain points in its progress; the first payment, $2,000, to be made when the basement walls were up to the first tier of floor joists, leveled up and bridged. The contract further provides that in each case of such payments a certificate should be obtained from the architect. The contract ’ contains a number of other provisions, of which we may refer here to the fourth, ninth and tenth. The fourth provides as follows: “Should the contractor, at any time during the progress of said work, become bankrupt, refuse or neglect to supply a sufficiency of material or workmen, or cause any unreasonable neglect or suspension of work, or fail or refuse to follow the drawings and specifications, or comply with any of the articles of agreement, the proprietors (parties of the second part) or their agent, shall have the right and power to enter upon and take possession of the premises, and may at once terminate the contract, whereupon all claims of the contractor, his heirs, executors, administrators or assigns, shall cease and *269 the proprietors may provide materials and workmen sufficient to complete the said works, after giving forty-eight hours’ notice in writing, directed and delivered to the contractor, . . . and the expense of such notice, and the completing of the works will be deducted from the amount of contract or any part of it due or to become due to the contractor,” etc. The ninth clause provides, among other things, that all work and materials as delivered on the premises to form part of the works are to be considered the property of the proprietors, and are not to be removed without their consent. The tenth clause provides that if the contractor fails to finish his work at or before the time agreed upon he should pay or allow the proprietors, by way of liquidated damages, the sum of $35 per day for each day the work remained incomplete or undelivered.
The specifications in general terms required that all material should be of the best description; that the contractor should furnish all material and do all necessary work to complete the buildings, whether specified or not, excepting certain things which were specifically omitted; no changes were to be made without previous agreement, and that the plans and drawings should form a part of both contract and specifications.
Replication was made to the answers of defendants. Testimony was taken, and the cause referred to the auditor to state an account between the parties. The auditor made his report, in which he passed upon the several alleged defects in the performance of the contract on the part of the plaintiff, as mentioned in the amended answer, and some in a letter which was written by tne architect to the plaintiff on the 5th of October, three days before the letter was written and notice given by the defendants and served upon the plaintiff which terminated the contract and dispossessed the plaintiff, and also some defects which it is claimed by the defendants appear in the evidence produced by them.
After passing upon all these matters in his report, the auditor states an account between the parties, in which he *270 finds to be due from the defendants, Tyler & Rutherford, in the first action, No. 9104, the sum of $2,146.44, on account' of labor performed and materials-furnished to the four buildings involved in that action.
In the next case, that of York against Brewer, No. 9105, he -finds to be due from the defendants to the plaintiff, $399.35- In the case of York against Knowles, Jones and others, No. 9106, the auditor finds to be due from the defendants to the plaintiff the sum of $798.72.
To this report and finding of the auditor, the defendants in each of the causes excepted, as follows:
No. 9104. First, they except to the allowance.by the auditor to the plaintiff of $1,226.34, for work done and materials furnished on houses on lots 69, 70, 71 and 72, in square 115.
Second. They excepted to the allowance by the auditor to the plaintiff of $499.34 as due him on account of excess of work on said houses.
Third. They except to the allowance of the auditor to the plaintiff of $370.39 on account of materials set forth in said Schedule A.
And said defendants, Tyler & Rutherford, aver in each of their said exceptions that each of said findings and certifications of the auditor is not supported by the evidence in said cause; and further, said auditor ought to have found there was nothing due to said plaintiff.
In cause No. 9105 the exceptions are precisely the same as in the previous case, with the exception that the amount is less; and the same is true of cause No. 9106.
Our first suggestion is in regard to the character of the exceptions. We think they are altogether too general. They are simply as to the amounts found due .from the defendants to the plaintiff. There are no exceptions to the finding of the auditor as to the defects which they allege in their answer existed in the workmanship of the plaintiff and in the materials which were furnished by the plaintiff.
Only recently, in the case of Haller vs. Clark, ante, p. 128, *271 we had occasion to remark upon the character of exceptions of this kind to the auditor’s report. We understand that the auditor of this court sustains a relation to it similar to that which a master in chancery ordinarily has to a court of equity, and that the same consideration should be given to. his report and exceptions, under a reference like the one made i-n this case, as should be given to reports made by masters in chancery. It has been held repeatedly by the Supreme Court of the United States that a general and indefinite exception to a report of a master in chancery ought not to be regarded by the court; that such an exception, for instance, as only means that the whole report is wrong, that it ought to be exactly the reverse, instead of pointing out definitely in what respect it is wrong, ought not to be regarded by the court. If the master has made a mistake in construing the evidence, in the application of the law, or in his finding upon some particular fact that is of importance in the decision of the case, the same should be definitely specified in the exception.
In other words, the exception should be definite and specific, and go to the very evil complained of by the party filing the exception. Otherwise, it should be disregarded by the court entirely.
This position is sustained by Harding vs. Handy, 11 Wheaton, 126, and in Story vs. Livingston, 13 Peters, 365.
We desire again to emphasize the importance of reform m this respect.
We have,'notwithstanding the imperfect character of these exceptions, proceeded to examine the case, following the arguments of counsel as if their exceptions reached all the matters of difference between the parties upon the hearing before the auditor.
The real question at issue between the parties is stated by the auditor on page 8 of his report to be as follows:
“The primary and pivotal question here is whether the act of the defendants' in taking possession of the premises and refusing to allow the plaintiff to proceed with the work was lawful and justifiable?”
*272 This is practically conceded by counsel for the defendant on page 11 of their brief to be the real contention. After discussing the authorities which relate to the right of a party to bring an action to recover for work done, labor performed or materials furnished upon a contract that has not been fully performed by him, they claim in their brief that under the weight of authority no such right exists on the part of the plaintiff, and that “ These authorities, we think, establish the doctrine that a person who has not performed his contract cannot recover.”
“We maintain that the present is that case; that the plaintiff did not perform or comply with his contract, and is therefore in the condition of one who sues on a contract which he himself has not kept. Our contention is that the testimony will show this non-compliance. If it does not, then we take nothing from the above rufe of law.”
It will be seen, then, that the auditor substantially adopts the position which the defendant, in his brief concedes; and he proceeds in his report to examine the evidence relating to each one of the specifications of defective performance on the part of the plaintiff, and gives his conclusion. So that there is really in the case for our consideration no question of law. This leaves only issues of fact, whether the evidence sustains the averments by defendant of defective workmanship and materials, or whether it shows that plaintiff substantially complied with his contract, and was not in that respect in default at the time that the defendants saw proper to give the notice which terminated his performance of the contract.
The auditor has, as we think, very carefully examined the evidence applicable to the determination of the several matters of contest between the parties, and has come to a rational, sensible and just conclusion in relation to all of them. His conclusion is, that as to all of these alleged shortcomings and defective performances on the part of the plaintiff, the defendants have failed to establish them or any of them by a preponderance of evidence to his satisfaction. *273 Upon reviewing the case, we are of opinion that the auditor has not erred in this conclusion.
When we come to the amounts which have been stated by the auditor as being due from the defendants to the plaintiff, there is hardly any room for controversy, because it is not contended seriously by the counsel for defendants that if they fail to establish their right to terminate the contract, they are not under obligation to pay the fair value of all the work performed and materials furnished by the plaintiff under the contract; and it is not alleged or claimed by counsel for the defendants that if the plaintiff is to be allowed the value of these materials and for this work — if he is not held to be in default — the values fixed by the auditor aré excessive.
We may again call the attention of the bar to the auditor’s findings in a report of this character, as has been repeatedly defined by the Supreme Court of the United States. We find that in the case of Crawford vs. Neal, 144 U. S., 585, the doctrine is repeated by Chief Justice Fuller. In delivering the opinion, he says:
* “The cause was referred to a master to- take testimony therein, ‘ and to report to this court his findings of fact and his conclusions of law thereon.’ This he did, and the court, after a review of the evidence, concurred in his findings and conclusions. Clearly, then, they are to be taken as presumptively correct, and unless some obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence, the decree should be permitted to stand.”
Citing: Tilghman vs. Proctor, 125 U. S., 136; Kimberly vs. Arms, 129 U. S., 512; Evans vs. State Bank, 141 U. S., 107.
In the next volume, 145 U. S., 132, in the case of Furrer vs. Ferris, the Supreme Court had the same question before them, and reaffirmed Crawford vs. Neal.
We think it entirely a work of supererogation to spend an hour or more, as would be required even in a very ab *274 breviated way, to follow the auditor in his findings in detail upon the question of the performance of the contract on the part of the plaintiff. We have carefully examined the whole case, and think, as shown here by the record, it should not for any reason presented be disturbed.

The decree of the court below affirming the auditor's report will be affirmed.